(No. 66771.—

*In re* GARY E. PEEL, Attorney, Respondent.

*Opinion filed February 2, 1989.*

CALVO, J., took no part.

William F. Moran III, of Springfield, for the Administrator of the Attorney Registration and Disciplinary Commission.

Robert W. Bosslet, of Morris B. Chapman & Associates, of Granite City, for respondent.

Eugene I. Pavalon, of Chicago, and Jeffrey R. White, of Washington, D.C., for *amicus curiae* Association of Trial Lawyers of America.

Timothy Wilton, of Boston, Massachusetts, for *ami-*

*cus curiae* National Board of Trial Advocacy.

JUSTICE RYAN delivered the opinion of the court:

Gary E. Peel is an attorney licensed to practice law in the State of Illinois. In 1983, the respondent, Peel, began placing on his letterhead that he was certified as a civil trial specialist by the National Board of Trial Advocacy (NBTA). Rule 2—105(a) of the Illinois Code of Professional Responsibility prohibits an attorney from holding himself out as "certified" or a "specialist" other than in fields of admiralty, trademark, and patent law. (107 Ill. 2d R. 2—105(a).) A panel of the Hearing Board of the Attorney Registration and Disciplinary Commission (ARDC) recommended that the respondent be censured, and the Review Board affirmed the panel's recommendation. The respondent filed exceptions with this court concerning the Review Board's finding that his conduct was misleading and its recommendation that he be censured. This case presents the issue of whether Rule 2—105(a) is unconstitutional as applied to attorneys' advertising certification by the NBTA, because it violates the first amendment guarantee of free speech.

The basis for the alleged violation of Rule 2—105(a)(3) was respondent's professional letterhead, which reads:

"Gary E. Peel
Certified Civil Trial Specialist
By the National Board of Trial Advocacy.
Licensed: Illinois, Missouri, Arizona"

Rule 2—105 of the Illinois Code of Professional Responsibility provides:

"Rule 2—105. Limitation of Practice

(a) A lawyer shall not hold himself out publicly as a specialist, except as follows:

(1) A lawyer admitted to practice before the United States Patent and Trademark Office may use the designation 'Patents,' 'Patent Attorney,' 'Patent

Lawyer,' or 'Registered Patent Attorney' or any combination of those terms, on his letterhead and office sign.

(2) A lawyer engaged in the trademark practice may use the designation 'Trademarks,' 'Trademark Attorney' or 'Trademark Lawyer,' or a combination of those terms, and a lawyer engaged in the admiralty practice may use the designation 'Admiralty,' 'Proctor in Admiralty' or 'Admiralty Lawyer,' or a combination of those terms, in any form of communication otherwise permitted under Rules 2—101 through 2—104.

(3) A lawyer or law firm may specify or designate any area or field of law in which he or its partners concentrates or limits his or its practice. Except as set forth in Rule 2—105(a), no lawyer may hold himself out as 'certified' or a 'specialist.' " (107 Ill. 2d R. 2—105.)

The Administrator for the ARDC asserts that respondent's holding himself out as a civil trial specialist certified by the NBTA is misleading, because this court does not recognize any such specialty. The Administrator contends that the advertisement is misleading in three ways. First, a person reading respondent's letterhead would be led to believe that respondent is a specially qualified attorney. Because this court licenses attorneys in this State, the Administrator claims that a reader might be led to believe that this court certifies respondent's claimed specialty. Second, the Administrator contends that the terms "certified" and "specialist" are technical in nature and could easily mislead the public. Third, respondent's advertisement, according to the Administrator, must be construed as a claim to the quality of legal services he provides, which is inherently misleading.

The respondent contends that the Supreme Court has extended the first amendment protection of commercial

speech to lawyers' advertisements by prohibiting the State's right to subject lawyer advertising to a "blanket suppression." (See *Bates v. State Bar* (1977), 433 U.S. 350, 53 L. Ed. 2d 810, 97 S. Ct. 2691.) Although the respondent acknowledges that the Supreme Court held that misleading advertising by attorneys may be prohibited entirely (see *In re R.M.J.* (1982), 455 U.S. 191, 71 L. Ed. 2d 64, 102 S. Ct. 929), he asserts that his claim that he is certified as a civil trial specialist by the NBTA would not mislead the public but instead would provide them with truthful, relevant information which would be helpful in the selection of a lawyer.

Similarly, the respondent asserts that claiming he is certified as a civil trial specialist is not even potentially misleading because it is a truthful statement. Furthermore, because the statement is not potentially misleading, the respondent contends, the State, at a minimum, is obligated to assert a substantial interest in order to prohibit the speech. In support of the assertion that the State has failed to establish a substantial interest in prohibiting the respondent from claiming he is a certified civil trial specialist, the respondent notes that Rule 2—105(a) allows admiralty attorneys to claim specialization without requiring the attorney to have any experience in that field of practice. Thus, the respondent claims the State has failed to establish a substantial interest in prohibiting the designation of certified civil trial specialist because it is not misleading or deceptive on its face. According to the respondent, the prohibition of Rule 2—105 is too restrictive because his designation of certified civil trial specialist cannot possibly mislead the public because it only appears on his professional letterhead which is generally sent to other lawyers and *present* clients.

Finally, respondent urges this court to follow two State supreme court cases which have held that a blanket prohibition on an attorney's claiming "certified civil

trial specialist" violates the first amendment. (See *Ex parte Howell* (Ala. 1986), 487 So. 2d 848; *In re Johnson* (Minn. 1983), 341 N.W.2d 282.) The courts in *Howell* and *Johnson* were confronted with issues similar to those in the case at bar: Does the first amendment prohibit a State's proscription of advertising the designation of certified civil trial specialist by the NBTA? The Alabama Code of Professional Responsibility provided that it was inappropriate for an attorney to hold himself out as a specialist except in the historically accepted fields of admiralty, trademark and patent law. (*Ex parte Howell*, 487 So. 2d at 849.) The Alabama Supreme Court held that the "advertisement of certification by the NBTA as a civil trial advocate would not be misleading or deceptive on its face." (*Ex parte Howell*, 487 So. 2d at 851.) The court, in *Howell*, noted that the public should be protected from potentially misleading representations and, therefore, directed the bar association to formulate a proposed rule and method for approving certifying organizations similar to the NBTA. (487 So. 2d at 851.) Similarly, in *In re Johnson* the Minnesota court held that the disciplinary rule prohibiting lawyer advertising of a legitimate specialization certification was unconstitutional, in view of its overbreadth. The Minnesota court noted that members of the general public could be misled by claims of specialization when no guidelines for specialization in the profession had been drawn. The court noted, however, that the hearing panel of the Board of Professional Responsibility found that the advertisement was not misleading or deceptive. (*In re Johnson*, 341 N.W.2d at 285.) Subsequently, the Minnesota Code of Professional Conduct was amended to provide for certification of organizations similar to NBTA by the State Board of Legal Certification (Minnesota Rules of Professional Conduct, Rule 7.4(b)), in order to protect

the public from spurious agencies and meaningless certifications.

*Amicus curiae* the National Board of Trial Advocacy urges this court to follow other States which have amended their ethics rules to permit a statement of specialty certification so long as the lawyer is certified by an approved agency with rigorous standards. (See, *e.g.,* Alabama Code of Professional Responsibility, Temporary D.R. 2–112; Connecticut Rules of Professional Conduct, Rule 7.4A.) The NBTA noted in its brief that the States which have programs regulating the advertising of specialty certification have approved the NBTA because it is a reputable organization with rigorous and comprehensive certification standards.

*Amicus* submits that an attorney's claiming certification by the NBTA is not misleading or even potentially misleading. Moreover, *amicus* contends that certification by the NBTA is precisely the sort of information which should be conveyed to the public and which is protected by the first amendment.

We begin our analysis of the issues by reviewing the constitutional limitations on the regulation of lawyer advertising. In *Bates v. State Bar* (1977), 433 U.S. 350, 53 L. Ed. 2d 810, 97 S. Ct. 2691, the Supreme Court declared that the first amendment protects some attorney advertising from State prohibition. The Court held that prohibitions on the advertising of legal fees for routine legal services were unconstitutional. (433 U.S. at 382, 53 L. Ed. 2d at 834-35, 97 S. Ct. at 2708.) The Court stated: "[C]ommercial speech serves to inform the public of the availability, nature, and prices of products and services, and thus performs an indispensable role in the allocation of resources in a free enterprise system." (433 U.S. at 364, 53 L. Ed. 2d at 823, 97 S. Ct. at 2699.) The Court, in *Bates*, further noted that a complete ban on advertising is "highly paternalistic" (433 U.S. at 365, 53

L. Ed. 2d at 824, 97 S. Ct. at 2699) and stated that "the preferred remedy is more disclosure, rather than less" (433 U.S. at 375, 53 L. Ed. 2d at 830, 97 S. Ct. at 2704-05).

Following the landmark case of *Bates*, the Supreme Court resolved the issue of whether an attorney could be limited to a list of categories when describing his area of practice in an advertisement. (*In re R.M.J.* (1982), 455 U.S. 191, 71 L. Ed. 2d 64, 102 S. Ct. 929.) In *In re R.M.J.*, attorney R.M.J. was disciplined by the Missouri Supreme Court because he listed in a newspaper advertisement areas of practice, some of which were not among the areas of practice designations allowed by the State disciplinary rules, and others deviated from the permitted terminology to describe the area. For example, R.M.J. advertised that he practiced "securities—bonds" and "personal injury." The governing rules did not provide for the listing of "securities—bonds," and "personal injury" was required to be listed as "tort law." Additionally, the advertisement stated that R.M.J. was admitted to practice before the United States Supreme Court, which was information not permitted under the State disciplinary rules. Finally, the advertisement failed to include the mandatory disclaimer of expertise. R.M.J. challenged all the prohibitions except for the validity of the disclaimer requirement. The Court, in *R.M.J.*, reemphasized that States could regulate claims of quality because they are more likely to mislead when the advertisement involves professional services. (455 U.S. at 201, 71 L. Ed. 2d at 73, 102 S. Ct. at 936.) The Court then summarized the commercial speech doctrine as applied to advertising for professional services as follows:

> "Truthful advertising related to lawful activities is entitled to the protections of the First Amendment. But when the particular content or method of the advertising

suggests that it is inherently misleading or when experience has proved that in fact such advertising is subject to abuse, the States may impose appropriate restrictions. Misleading advertising may be prohibited entirely. But the States may not place an absolute prohibition on certain types of potentially misleading information, *e.g.*, a listing of areas of practice, if the information also may be presented in a way that is not deceptive." (*In re R.M.J.* (1982), 455 U.S. 191, 203, 71 L. Ed. 2d 64, 74, 102 S. Ct. 929, 937.)

The Court found that the restriction on the listing of areas of practice did not serve a substantial State interest and reversed the discipline as contrary to the first amendment. 455 U.S. at 205, 71 L. Ed. 2d at 75, 102 S. Ct. at 938.

More recently, in *Zauderer v. Office of Disciplinary Counsel* (1985), 471 U.S. 626, 85 L. Ed. 2d 652, 105 S. Ct. 2265, the Supreme Court once again reviewed the discipline of an attorney for advertising. Zauderer was disciplined by the Ohio Supreme Court for placing an advertisement in a newspaper which (1) contained an illustration of a medical device alleged to have caused injuries to women; (2) solicited legal employment from other women who may have been injured by the medical device; and (3) stated, "[i]f there is no recovery, no legal fees are owed by our clients," but failed to include a statement that the client must pay litigation costs even if the lawsuit should be unsuccessful. (*Zauderer v. Office of Disciplinary Counsel* (1985), 471 U.S. 626, 630-33, 85 L. Ed. 2d 652, 659-61, 105 S. Ct. 2265, 2271-72.) The Court held that it was permissible to discipline Zauderer for failing to disclose the responsibility for costs in contingent fee cases, but that the State could not impose discipline for the illustration or solicitation of employment through the newspaper advertisement. The Court held that mandatory disclosure of costs in contingent fee cases did not overly restrict the flow of information, be-

cause it permitted the advertisement of contingent fees but was necessary so that potential clients would not be misled into thinking that they would not have any expenses if the litigation was not successful. 471 U.S. at 650-53, 85 L. Ed. 2d at 671-73, 105 S. Ct. at 2281-83.

The issue presented in this case is whether the current disciplinary rule of this court prohibiting the respondent from advertising certification by the NBTA survives recent decisions of the United States Supreme Court. As previously noted, the Administrator for the Attorney Registration and Disciplinary Commission (ARDC) asserts that respondent's claim of certification by the NBTA is misleading and, therefore, can be banned entirely.

The respondent contends that the ARDC failed to present any evidence concerning the potential of the claim of certification by the NBTA to mislead and, therefore, the State at a minimum must establish a *substantial interest* to warrant the blanket suppression. We do not agree. The deception and confusion is particularly apparent in this case for two reasons. First, the claim of certification by the NBTA impinges upon the sole authority of this court to license attorneys in this State and is misleading because of the similarity between the words "licensed" and "certified." Webster's dictionary defines "certificate" as "a document containing a certified and usually official statement \*\*\*, especially: a document issued by \*\*\* a state agency \*\*\* certifying that one has satisfactorily \*\*\* attained professional standing in a given field *and may officially practice or hold a position in that field.*" (Emphasis added.) (Webster's Third New International Dictionary 366 (1986).) A "license" is defined by Webster's as "a right or permission granted \*\*\* by a competent authority to engage in a business or occupation \*\*\* or to engage in some transaction which *but for such license would be unlawful.*" (Emphasis added.) (Webster's

Third New International Dictionary 1304 (1986).) Indeed, it is apparent from the foregoing that the general public could be misled to believe that the respondent may practice in the field of trial advocacy solely because he is certified by the NBTA. In respondent's letterhead, which we have set out above, directly below the statement concerning certification is the following: "Licensed: Illinois, Missouri, Arizona." The letterhead contains no indication that the licensure was by official organizations which had authority to license, whereas the certification was by an unofficial group and was purely a voluntary matter.

Additionally, the claim that the respondent is certified as a civil trial specialist by the NBTA is misleading because it tacitly attests to the qualifications of the respondent as a civil trial advocate. Because not all attorneys licensed to practice law in Illinois are certified by the NBTA, the assertion is tantamount to a claim of superiority by those attorneys who are certified. Notably, the Supreme Court has stated that claims as to the quality of legal services "might be so likely to mislead as to warrant restriction." *In re R.M.J.* (1982), 455 U.S. 191, 201, 71 L. Ed. 2d 64, 73, 102 S. Ct. 929, 936.

Contrary to our finding, the *amici* and respondent insist that the claim of certification by the NBTA is not misleading. They argue that because of the rigorous standards of the NBTA, such certification carries with it a degree of assurance to the public of the attorney's competence. However, it is interesting to note that none of the briefs filed in support of the respondent agree as to what standards an attorney must meet to receive certification from the NBTA. In the respondent's brief, it is stated that "[t]o obtain certification by the National Board of Trial Advocacy, an attorney must have *** acted as lead counsel in at least 40 jury trials carried to verdict, or 100 non-jury matters tried to conclusion, successfully score on a six-hour written examination, main-

tain continuing participation in continuing legal educa-
tion, and obtained other standards and achievements."
The Association of Trial Lawyers of America filed an
*amicus* brief, in which it is stated that the primary re-
quirements for certification "are that the attorney have
at least five years experience in civil practice, including
experience as lead counsel in at least 15 major cases
tried to verdict." The National Board of Trial Advocacy
also filed an *amicus* brief, in which it is stated that, to
be certified, an attorney must "have appeared as lead
counsel in not less than 15 complete trials of civil mat-
ters to verdict or judgment, including not less than 45
days of full trial; at least five of these trials must be to a
jury. In addition, applicants must have appeared as lead
counsel in at least forty additional contested matters in-
volving the taking of testimony. These may include tri-
als, evidentiary hearings, depositions, or motions heard
before or after trial." Does certification mean that the
attorney has tried 40, 15, or 5 jury trials to verdict?
Does the requirement concerning 40 contested matters
refer to 40 jury cases tried to verdict, as the respondent
asserts, or simply 40 hearings on motions, depositions
and nonjury trials, as the National Board of Trial Advo-
cacy claims? If certification conveys such a varied and
uncertain understanding as to its meaning to the attor-
neys who are in this case contending for the cause of
certification, and who should be knowledgeable as to its
meaning, how much more confusing is the statement
that an attorney is certified as a trial specialist likely to
be to the general public?

In *In re Johnson* (Minn. 1983), 341 N.W.2d 282, the
Minnesota court acknowledged that members of the gen-
eral public could be misled by claims of specialization
when no guidelines for specialization in the profession
have been drawn. In *Johnson*, however, since the hear-
ing panel had found that the advertisement was not mis-

leading or deceptive, the Minnesota court found that the blanket ban of its disciplinary rule was over-broad.

We are not confronted, as the Minnesota court was, by such a finding of our hearing panel. In our case, the hearing panel found that the letterhead with its statement that the respondent was certified as a trial specialist was misleading and deceptive. As noted above, in discussing *In re R.M.J.*, advertising which is misleading may be prohibited entirely.

The American Bar Association Model Rules of Professional Conduct were adopted by the House of Delegates of the American Bar Association in 1983. Rule 7.4 of the Model Rules contains a prohibition against a lawyer's holding himself out as a specialist similar to that contained in Rule 2—105 of our Code of Professional Responsibility, with the addition of an exception on designation of specialization of the particular State. The comment to Model Rule 7.4 says that a lawyer is permitted to indicate that he practices in certain fields or will not accept matters except in such fields. "However, stating that the lawyer is a 'specialist,' or that the lawyer's practice is limited to and 'concentrated in' particular fields is not permitted. These terms have acquired a secondary meaning implying formal recognition as a specialist. Hence, use of those terms may be misleading unless the lawyer is certified or recognized in accordance with procedures in the state where the lawyer is licensed to practice."

In a draft of the American Bar Association Standing Committee on Ethics and Professional Responsibility Report to the House of Delegates (Draft Report), dated August 29, 1988, it was recommended that the black letter of Model Rule 7.4 remain unchanged, but that the comment be amended to delete the language which states that a lawyer may not say that his practice is "limited to" or "concentrated in" particular fields. The Draft Re-

port discusses *Bates, In re R.M.J.* and *Zauderer,* and concludes:

> "While these opinions appear to support a Rule 7.4 prohibition of a lawyer describing himself or herself as a 'specialist' except in certain limited areas, they also lead to questions about the language of the Comment to Rule 7.4 which prohibits a lawyer from advertising that his or her services are 'limited to' or 'concentrated in' particular fields." (Draft Report, at 3.)

Under the heading "Policy Considerations," the Draft Report states:

> "In view of the desirability of promoting accurate communication by lawyers concerning their services and experience, absolute prohibition of the phrases 'limited to' and 'concentrated in' is unwarranted. These phrases can provide valuable information to a consumer. Unlike the terms 'specialist,' 'practices a specialty' and 'specializes in,' the phrases 'limited to' and 'concentrated in' lack the clear implication of formal recognition of a specialist. Therefore, the comment to Rule 7.4 should not prohibit statements that a lawyer's practice is 'limited to' or 'concentrated in' a particular field." Draft Report, at 5.

The comment to Rule 7.4, after the recommended changes, would read:

> "This Rule permits a lawyer to indicate areas of practice in communications about the lawyer's services, for example, in a telephone directory or other advertising. If a lawyer practices only in certain fields, or will not accept matters except in such fields, the lawyer is permitted so to indicate. However, a lawyer is not permitted to state that the lawyer is a 'specialist,' practices a 'specialty,' or 'specializes in' particular fields. These terms have acquired a secondary meaning implying formal recognition as a specialist and, therefore, use of these terms is misleading. [An exception would apply in those States which provide procedures for certification or recognition of specialization and the lawyer has complied with such procedures. See Section (c) of this Rule.]" Draft Report, at 1.

Thus, the conclusion of the Draft Report is that the terms "specialist" or "practices a speciality" or "specializes in" particular fields have acquired a secondary meaning implying formal recognition as a specialist and use of these terms is misleading, except in States which provide procedures for such certification. This conclusion conforms to the findings of the Hearing Board in the case before us that the statement as used by the respondent on his letterhead is misleading. This is particularly so when the statement was used on respondent's letterhead in conjunction with information about official licensures in Illinois, Missouri and Arizona. As noted above, the Supreme Court in *In re R.M.J.* stated that misleading advertising may be prohibited entirely. (455 U.S. at 203, 71 L. Ed. 2d at 74, 102 S. Ct. at 937.) This State has not provided any procedure for formal recognition of specialists in the practice of law. Therefore, the use of the information on respondent's letterhead stating that he is certified as a trial specialist by the National Board of Trial Advocacy is misleading. Rule 2—105(a) of our Code of Professional Responsibility, prohibiting the use of the term "specialist," is not violative of respondent's constitutional right of free speech.

Finally, respondent asserts that there is no rational justification for allowing attorneys practicing in admiralty to claim to be a specialist and not attorneys certified by the NBTA. In support of this assertion, respondent notes that "proctor in admiralty or trademarks lawyer" does not require that attorney to have any experience in those fields of practice. It should be noted at the outset that an attorney holding himself out as a specialist is distinct from a claim of certification. The claim of certification is potentially more misleading because it tacitly asserts "qualified." (See C. Wolfram, Modern Legal Ethics 205 (1986).) Additionally, allowing attorneys

practicing in admiralty to advertise their specialties in no way implies that the admiralty attorney is more capable than any other admiralty attorney because all such attorneys may advertise the fact. Moreover, the historical basis for allowing attorneys specializing in patent, trademark and admiralty law to advertise their specialization had to deal with the difficulty of the general public in finding attorneys who practiced in such fields. (See *Silverman v. State Bar* (5th Cir. 1968), 405 F.2d 410, 414.) This historical distinction is not without difference; locating an attorney who is a civil trial advocate would not involve the same difficulty. Because Rule 2–105 permits attorneys or firms to designate areas in which their practices are concentrated or to which their practices are limited, so long as these claims do not imply certification by this court, Rule 2–105 is therefore not overly restrictive. See 107 Ill. 2d R. 2–105, Committee Comments, at 624.

We adopt the recommendation of the Review Board and impose the sanction of censure on respondent.

*Respondent censured.*

JUSTICE CALVO took no part in the consideration or decision of this case.